Argued and submitted May 20, 2022, affirmed April 26, petition for review denied September 14, 2023 (371 Or 333)

Ignatius SODARO,
*Plaintiff-Appellant,*

*v.*

Carnetta BOYD,
*Defendant-Respondent.*

Multnomah County Circuit Court
18CV51752; A174005

529 P3d 961

Plaintiff appeals from a judgment entered in his favor after a jury awarded him money damages for injuries he sustained in an automobile accident. The issue of causation was litigated at trial and multiple potential causes for plaintiff's alleged injuries were presented to the jury. Plaintiff asked the trial court to instruct the jury with a substantial-factor causation instruction instead of a but-for causation instruction. Plaintiff did not argue that exceptional circumstances warranted the use of the substantial-factor instruction. Defendant asked the trial court to instruct the jury with a but-for causation instruction. The trial court concluded that the but-for causation instruction was better suited for the facts of the case. On appeal, plaintiff argues that the trial court erred when it failed to instruct the jury that conduct is a cause of injury when it is a substantial factor in producing it, even though it is not the only cause. *Held*: The trial court did not err in instructing the jury. The but-for causation instruction was proper in this negligence case, and it was not error for the trial court to not give the substantial-factor instruction.

Affirmed.


Christopher A. Ramras, Judge.

Kathryn H. Clarke argued the cause and filed the briefs for appellant.

Andrew D. Glascock argued the cause for respondent. Also on the brief was Glascock Street Waxler LLP.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Plaintiff appeals from a judgment entered in his favor after a jury awarded him money damages for injuries he sustained in an automobile accident.[1] In his sole assignment of error, he asserts that the trial court erred when it failed to instruct the jury that conduct is a cause of injury when it is a "substantial factor" in producing it, even though it is not the only cause. For the reasons explained below, we conclude that the trial court did not err and, therefore, affirm.

## I.  STANDARD OF REVIEW

"We review a trial court's failure to give a requested jury instruction for errors of law, and evaluate the evidence in the light most favorable to the establishment of the facts necessary to require the instruction." *Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019) (citations omitted).

## II.  FACTUAL AND PROCEDURAL BACKGOUND

### A.  *The Sudden Stop and The Rear-End Collision*

The basic facts about how this motor vehicle accident occurred are not in dispute. Plaintiff, then 76 years old, and visiting family in Oregon, was the front seat passenger in an Acura MDX (the SUV) being driven by his adult son. The collision occurred late one fall evening at the intersection of the northbound I-5 offramp and Southwest Wilsonville Road. The SUV had been traveling north on I-5 when it took the exit and then came to a full stop at the red light at the intersection, waiting to turn left. Defendant was driving her car, a Ford Focus, and came to a stop behind the SUV. After the light turned green, the SUV started forward and then had to stop suddenly for another car that ran the red light on Wilsonville Road and crossed through the intersection. Defendant's car immediately collided into the rear of the SUV.[2]

---

[1] The jury awarded plaintiff total damages in an amount that was less than two percent of his prayer.

[2] We refer to those sequential events as the sudden stop and the rear-end collision.

B.  *The Pleadings*

Plaintiff's amended complaint described the key events as follows:

> "* * * [T]he driver of [plaintiff's] SUV had to stop for another car that was crossing within the intersection. While he was still stopped, [d]efendant collided into the rear of [plaintiff's] Acura MDX. Said collision caused [plaintiff's] injuries and damages as alleged herein, all of which were reasonably foreseeable."

Plaintiff alleged that defendant had been negligent in a number of ways that led to the collision, and he also alleged that:

> "At all times material, [plaintiff] had a bodily condition of his spine that made him more susceptible to injury than a person in normal health, and he suffered injury as a result of that condition."

Plaintiff sought to hold defendant liable for the damages he sustained as a result of the injuries caused by defendant's alleged negligence. There were no other named defendants.

Defendant filed an answer in which she admitted that "she was involved in an automobile incident with a vehicle occupied by the [p]laintiff." She denied all other allegations and asserted this affirmative defense:

> "Some or all of [p]laintiff's damages were caused by the negligence of the unidentified driver over which [d]efendant had no control. Specifically the unidentified driver traveling on Wilsonville Road who ran a red light causing [p]laintiff to make a sudden emergency stop directly in front of [d]efendant. This sudden emergency stop caused [p]laintiff's injuries, if any, and caused the collision to occur between [p]laintiff and [d]efendant."

C.  *The Trial*

The case went to trial three years later. In his opening remarks to the jury, plaintiff's counsel described the force of impact when the Ford Focus collided with the SUV as more than "an insignificant parking lot type of impact" and less than "a freeway speed event." He explained that even though the impact "wasn't huge," plaintiff was injured. He told the jury that plaintiff had some preexisting

medical conditions that left him more susceptible to injury than a person without those conditions, and that plaintiff did, in fact, sustain significant injuries in the collision that required medical treatment.

Plaintiff testified that he heard a pop in his shoulder when the SUV came to a quick and sudden stop, but that he did not recall feeling any pain at that point. He did, however, experience pain in his neck, middle back, and shoulder, as well as shortness of breath after the SUV was struck from behind by defendant's car. Plaintiff sought medical treatment at an urgent care clinic the next day. He received chiropractic treatment while in Oregon and again upon returning home to Florida. He later sought treatment from Dr. Smith, a neurosurgeon, and from Dr. Bistline, a board-certified anesthesia and pain management physician. Plaintiff testified that he has had neck and back pain continuously since the day of the collision.

Plaintiff called several witnesses, including Smith, who offered his professional opinion, based on a reasonable degree of medical probability, that the rear-end collision caused injuries to plaintiff's neck and back that worsened his underlying conditions, causing plaintiff's current and ongoing neck and back pain that, without any additional treatment, would likely be permanent. Smith testified to the details of his diagnostic process, which included, among other things, reviewing a series of pre-accident imaging studies that showed degenerative changes in plaintiff's spine and that led Smith to conclude that, at the time of the collision, plaintiff was more likely to have developed a painful condition from being involved in a collision than someone who did not have similar preexisting conditions. Smith testified about his treatment recommendations for plaintiff, which included steroid injections into the facet joints of the thoracic spine and, eventually, a different kind of injection for longer-term relief, which helped for a while. Ultimately, Smith offered plaintiff surgical intervention with an "anterior cervical discectomy and fusion," because he did not think that nonsurgical treatment alone would be enough to relieve plaintiff's ongoing pain. Plaintiff declined that surgery for various reasons, including his advanced age. Smith testified that, in any event, plaintiff

would likely require chronic pain management and functional rehabilitation to improve his range of motion and pain level.

On cross examination, Smith admitted that he did not know the speed of the vehicles at the moment of impact and that his chart notes do not reflect that there had been a hard stop prior to the rear-end collision. He agreed that the mechanics of a hard stop could cause a neck injury. When asked if he could "definitively * * * differentiate any injuries that [plaintiff] sustained in the hard stop versus the rear-end accident[,]" Smith replied, "No, I don't think I can." On re-direct examination, Smith explained that it was "probable and most likely" that plaintiff's injuries stemmed from the rear-end collision, although it was "a little less definitive."

Defendant took the position at trial that the rear-end collision was caused by the driver who ran the red light, and not by her. She characterized the collision as a "very minor rear-end impact" event and she argued that if there was any injury, it was minor. Any medical expenses beyond those incurred for limited soft tissue injuries, according to defendant, were unrelated to the rear-end collision and were, instead, related to either the sudden stop or plaintiff's degenerative neck and back conditions that predated the event, neither of which were caused by her.

Defendant called Dr. Polin, a neurosurgeon, who testified that he had examined plaintiff in person, reviewed pre- and post-collision medical records and imaging studies, as well as some deposition transcripts. Polin's opinion was that plaintiff had suffered sprain and strain injuries, or soft tissue injuries, to the cervical, thoracic, and lumbar spine. Polin testified that, absent speculation, he could not give an opinion about whether the sudden stop, the rear-end collision, or both had played a role in causing plaintiff's injuries, although he did testify that plaintiff's injuries could have been caused by the sudden stop, the rear-end collision, or a combination of both. He added that he would defer to the "biomechanical people" about what the respective forces of the two events were. Polin testified that the changes to plaintiff's facet joints were related to his arthritis and

degenerative condition rather than to the collision. It was Polin's opinion that the treatment plaintiff had received through April 4, 2017, which was mostly chiropractic care, was reasonable and necessary as a result of the events on the day of the collision.

Defendant also called a biomechanical engineer, Probst, to testify. Probst conducted a biomechanical evaluation of the rear-end collision, which included consideration of speed, forces, and movement, and the individual involved. He testified that there was insufficient force to cause plaintiff's cervical, mid-back, low back, shoulder, disc, or facet joint injuries. Probst did not evaluate the biomechanics of the sudden stop, and he did not offer an opinion about the probability of that stop causing plaintiff's injuries. However, when pressed, Probst testified that there would have been "more motion" with the sudden stop than with the rear-end collision.

D.   *The Jury Instructions – at Trial*

The parties disagreed on the causation instruction to be given to the jury. Plaintiff requested that the trial court give the "substantial factor" instruction, UCJI 23.02:

> "Many factors or things may operate either independently or together to cause injury. In such a case each may be a cause of the injury even though the others by themselves would have been sufficient to cause the same injury.

> "If you find that the defendant's act or omission was a substantial factor in causing the injury to the plaintiff, you may find that the defendant's conduct caused the injury even though it was not the only cause. A substantial factor is an important factor and not one that is insignificant."

Defendant requested that the trial court provide a "but for" causation instruction:

> "[Defendant's] conduct is a cause of plaintiff's injury if the collision between her car and the *** SUV would not have occurred but for that conduct and plaintiff's injuries would not have occurred but for that conduct. Conversely, [defendant's] conduct is not a cause of plaintiff's injuries if those injuries would have occurred without that conduct."

In support of his request for the substantial-factor instruction, plaintiff argued that although Smith testified that plaintiff's injuries were probably caused by the rear-end collision, Polin testified that plaintiff's injuries could have been caused by the sudden stop, the rear-end collision, or a combination of both.[3] Plaintiff also argued that if the jury found that plaintiff's injuries were caused by a combination of the sudden stop and the rear-end collision, and it only had the but-for instruction on causation, it might try to apportion the damages between each segment of the event and award only those apportioned to the rear-end collision, even though the law would permit them to find that defendant caused all of plaintiff's damages so long as the rear-end impact was a substantial factor in causing those injuries. Plaintiff argued that the substantial-factor instruction would correctly explain that to the jury.

Defendant argued that under *Joshi v. Providence Health System*, 342 Or 152, 149 P3d 1164 (2006), use of the substantial-factor instruction is proper "only in limited situations involving multiple tortfeasors," and that the but-for instruction is the legally correct choice here, because "there are not multiple alleged tortfeasors involved." Defendant's argument in favor of the but-for instruction and against the substantial-factor instruction reduced to this: Plaintiff did not allege that multiple tortfeasors combined to cause his injuries, and even if he had, defendant would not be liable for those injuries unless plaintiff proved that his injuries would not have occurred in the absence of defendant's negligent conduct.

The trial court, relying primarily on *Joshi*, noted that plaintiff had not alleged that two tortfeasors acted in concert to cause his injuries, and determined that the "but for" causation instruction was "better suited" for the facts of this case. Thus, along with other instructions, the court instructed the jury:

> "The Defendant's conduct is a cause of the Plaintiff's injury if the injury would not have occurred but for that conduct.

---

[3] Plaintiff had included both the but-for and substantial-factor instructions in his proposed jury instructions; however, based on the evidence at trial, plaintiff ultimately asked the trial court to instruct the jury with only the substantial-factor instruction.

Conversely, the Defendant's conduct is not a cause of the Plaintiff's injury if that injury would have occurred without that conduct."[4]

Ultimately, plaintiff asked the jury to award damages for past and future medical expenses in an amount up to $131,630.57 and noneconomic damages of $250,000. Defendant suggested to the jury that plaintiff's damages would, at most, be for the cost of chiropractic care for a particular period of time, which cost just under $7,100.00. The jury found that defendant was negligent, and that her negligence was "a cause of damages to the plaintiff." The jury awarded $4,339.98 for past medical expenses and $2,400.00 for noneconomic damages.

E.   *The Jury Instructions – on Appeal*

On appeal, plaintiff asserts that the trial court erred by failing to instruct the jury that conduct is a cause of injury when it is a substantial factor in producing it, even though it is not the only cause. Plaintiff contends that in a case such as this one, where the evidence would support a finding that multiple factors contributed to the injuries for which plaintiff sought compensation, the proper test for the causal link between defendant's negligence and plaintiff's injuries is reflected in the substantial-factor instruction. Plaintiff argues that his requested instruction was a correct

---

[4] The court instructed the jury about plaintiff's preexisting condition as follows:

"Damages previous infirm condition. If you find that the Plaintiff has a bodily condition that predisposed him to be more subject to injury than a person in normal health, nevertheless, the Defendant would be liable for any and all injuries and damage that may have been suffered by the Plaintiff as a result of the negligence of the Defendant. Even though those injuries, due to the prior condition, have been greater than those that would have been suffered [by] another person under that same circumstance[].

"Damages, aggravation or pre-existing injury or disability. In the present case, the Plaintiff has alleged that the injury which he sustained as a result of the negligence of the Defendant, aggravated a pre-existing injury of his.

"In determining the amount of damages, if any, to be awarded [to] the Plaintiff in this case, you will allow him reasonable compensation for the consequences of any such aggravation that you find to have taken place as a result of the Defendant's negligence. The recovery should not include damages for the earlier injury, only those that are due to its enhancement or aggravation."

Plaintiff did not assign error to the giving of those instructions.

statement of the law and that, given how the case was presented and how defendant argued her defense, the but-for instruction was legally insufficient. He argues further that the but-for instruction improperly instructs the jury that conduct causes injury only if the injury could not otherwise have occurred, suggesting that defendant's conduct must have been the major—or predominant—causative factor.

In response, defendant contends that the court properly instructed the jury on causation. She asserts that, based on plaintiff's theory of causation and the evidence he presented in support of that theory, neither the sudden stop nor the pre-existing condition would have caused plaintiff's injuries absent defendant's negligent conduct. Therefore, according to defendant, the trial court correctly determined that plaintiff was required to prove that but for the rear-end collision, he would not have been injured.

## III.   ANALYSIS

"[J]ury instructions matter." *Ossanna*, 365 Or at 221. They matter because they tell the jury "what laws [to apply] in the case." *Id.*

Jury instructions must be understandable. The parties are entitled to jury instructions that are "plain, clear, [and] simple." *Williams et al. v. Portland Gen. Elec.*, 195 Or 597, 610, 247 P2d 494 (1952). "Where the law is complex, it is even more important to instruct in clear and simple terms." *Holbrook v. Amsberry*, 289 Or App 226, 248, 410 P3d 289 (2017). Given that each juror brings their own unique set of life experiences to court, the need for clarity in each particular case cannot be overstated. For a jury to effectively use the court's instructions on the law, its members must be able to understand those instructions so that they can then correctly and meaningfully apply the law to the evidence and reach a legally valid verdict.

Jury instructions must be connected to the case theories and evidence.

"[A] party is entitled to a jury instruction on its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence. A trial court, however, is not required to

give a requested instruction if another instruction adequately addresses the issue."

*Ossanna*, 365 Or at 212-13 (internal quotation marks and citations omitted).

A.   *Causation as an Element of a Claim for Negligence in the Post-*Haas *Era*

We begin with the Supreme Court's recent decision in *Haas v. Estate of Mark Steven Carter*, 370 Or 742, 525 P3d 451 (2023), which issued after the parties briefed and argued this appeal.[5] Although distinguishable on some of the underlying facts, *Haas* concerns the same jury instructions that are at issue here and is controlling authority as we review those instructions in the context of this case. Our analysis necessarily applies the law that is now in effect because "[t]he 'benchmark' for error is the law existing as of the time the appeal is decided." *State v. Jury*, 185 Or App 132, 137, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).

Causation "is a purely factual matter" that is distinct from proximate cause and legal cause, both of which have been abolished in Oregon. *Haas*, 370 Or at 748 (quoting *Lasley v. Combined Transport, Inc.*, 351 Or 1, 6-7, 261 P3d 1215 (2011)). "Causation in fact is established when someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence." *Id.* (internal brackets and quotation marks omitted). In the court's discussion of causation, it expressly agreed that:

> "[F]actual causation 'is not a quest for a *sole* cause. Probably it cannot be said of any event that it has a single causal antecedent; usually there are many.'"

*Id.* at 748 (quoting Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, 4 *Harper, James and Gray on Torts* § 20.2, 100 (3d ed 2007) (emphasis in original)). The question, then, of whether a defendant's specific act or failure to act was a

---

[5] In *Haas*, the plaintiffs' stopped car was hit by a car driven by the defendant; the plaintiffs brought a negligence action. The plaintiffs had preexisting conditions, and therefore, according to the plaintiffs, the jury was confronted with multiple possible causes of the plaintiffs' neck and back problems—the preexisting conditions and the auto collision. 370 Or at 744-46.

cause-in-fact of a plaintiff's harm requires an answer to this question: would the harm have occurred but for the defendant's conduct? *Id.* at 749. Stated another way—would the harm have occurred in the absence of the defendant's conduct? If the answer to the question—stated either way—is no, then the defendant's negligent conduct is a cause of the injuries. Stated yet another way, if the plaintiff's injuries would have occurred in the absence of the defendant's conduct, then the defendant's conduct was not a cause of those injuries in the context of a negligence claim.

The fact that more than one event, act, or circumstance might play a role in bringing about the injuries is simply part of the landscape that the jury is tasked with considering as it evaluates whether, in fact, the defendant was a cause of the injuries. It is helpful to remember that cause-in-fact is not the same thing as liability; rather, it is one element of a negligence claim that, if proven, *could* lead to liability. *Id.* at 749 n 5.

The Supreme Court concluded that the but-for test for causation applies in most negligence cases, and that the but-for jury instruction is likewise the appropriate instruction to be given in most cases. *Id.* at 755, 757-58. The substantial-factor test, on the other hand, "was developed primarily for * * * the situation in which the concurrent conduct of two or more causes combine to create an injury, and either one of those causes, operating alone, would have been sufficient to produce the same result." *Id.* at 750 (citing Keeton, *Prosser and Keeton on The Law of Torts* § 41, 268 (5th ed 1984); Harper, 4 *Harper, James and Gray on Torts* § 20.2, 100-01 (3d ed 2007)). The court explained that the but-for test does not reduce causation to a single cause:

> "[T]here may be many causes of a plaintiff's harm and * * * when multiple tortfeasors contribute to that harm, all may be held liable for it: When an injury would not have occurred without the combined negligence of many, the negligence of each is a but-for cause of the resulting injury."

*Id.* at 753.

The plaintiffs in *Haas*, like the plaintiff here, argued broadly "that a substantial factor instruction is required in all multiple causation negligence cases and that a but-for

instruction does not suffice." *Id.* at 757. They also argued, as does plaintiff here, "that a but-for instruction necessarily indicates that a defendant cannot be held liable unless the defendant's conduct was the sole or predominate cause of the plaintiffs' injuries." *Id.* The court, in *Haas*, rejected those broad assertions, stating that

> "[m]ost negligence cases include evidence of multiple causal factors, and in most cases, a but-for instruction correctly describes the necessary cause-in-fact relationship. A but-for instruction does not fail in every multiple causation case, nor does it implicitly tell a jury that it must find that the defendant's conduct was the sole or predominate cause of the alleged harm."

*Id.* at 757-58.

In concluding that the trial court did not err in declining to give the substantial-factor instruction in *Haas*, the Supreme Court found it "significant that plaintiffs [did] not contend that this [was] one of the exceptional instances in which the but-for instruction fails[.]" *Id.* at 758. The plaintiffs had not argued that the circumstances in that case were in any way exceptional or that the facts of that case were such that the but-for instruction would not correctly describe the required causal relationship between the defendant's conduct and the plaintiffs' injuries. They instead argued that causation is a "particularly difficult concept" in cases where there are preexisting medical conditions. *Id.* The court acknowledged that a defendant may point their finger at other parties or causes—the so-called empty chair defense—in an effort to escape liability but concluded that "such an argument does not render a but-for instruction erroneous." *Id.* at 759. The court held that a substantial-factor instruction is not required in all multiple causation negligence cases and that, under the circumstances of *Haas*, it was not error to decline to give that instruction. *Id.* at 762-63.

B.   *Parties are entitled to instructions that properly address their theory of the case as well as that put forward by their adversary.*

We reject the contention that plaintiff was restricted to a jury instruction on causation only if it was supported by

his complaint or the evidence that he produced during the trial. As the Supreme Court explained:

> "[W]e do not agree that a party is entitled to an instruction only if that party adduces evidence or makes an argument material to the requested instruction. A party may be entitled to an instruction that addresses an opposing party's evidence or argument."

*Id.* at 759 n 13. Although plaintiff named only one defendant here, his pleadings describe the rear-end collision, the sudden stop, and his preexisting medical conditions. Plaintiff's counsel described both segments of the accident as well as the preexisting conditions in his opening statement and closing argument. Defendant raised an affirmative defense in which she alleged that the sudden stop—not the rear-end collision—was the cause of plaintiff's injuries, and she argued that his preexisting injuries accounted for much of his pain and related medical care. The sudden stop, the rear-end collision, and the preexisting injuries were the subject of much testimony and debate throughout the trial. Plaintiff was entitled to request jury instructions that addressed both his theory of the case as well as that put forward by defendant.

C.   *The but-for instruction on causation is proper in most multiple-cause negligence cases.*

To the extent that plaintiff argues that all multiple-cause negligence cases merit giving the substantial-factor instruction, *Haas* has squarely rejected that argument and we, in turn, must do the same. *Id.* at 758. Such a broad rule would also be inconsistent with *Joshi*, where the court stated that the but-for and substantial-factor standards "produce the same result in most cases." 342 Or at 162. But the court did, in *Joshi*, describe certain situations in which the but-for test would fail, requiring that the substantial factor instruction be given: (1) "where 'two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result'"; (2) "'where a similar, but not identical result would have followed without the defendant's act'"; and (3) "'where one defendant has made a clearly proved but quite insignificant contribution to the result.'" *Id.* at 161 (quoting *Prosser and Keeton on The*

*Law of Torts* § 41 at 267-68). *See also Haas*, 370 Or at 750-52
(explaining that while *Joshi* is distinguishable from *Haas*
because *Joshi* was a wrongful death case about the suffi-
ciency of the evidence on causation, it relied on the same
treatise provisions from *Prosser and Keeton* and agreed that
the substantial-factor standard had not been replaced by
the but-for standard, but rather, those standards apply to
different types of negligence cases).

D. *Plaintiff has not argued that exceptional circumstances
warranted the use of the substantial-factor instruction.*

       Plaintiff did not, and does not, argue that this case
fits into any of the three scenarios, described in *Joshi*, that
would render the but-for instruction an inadequate or unclear
statement of the law on causation. Plaintiff did argue that
there was a risk that the but-for instruction would confuse
the jury on how to evaluate defendant's conduct on the ques-
tion of causation. Plaintiff focused on the evidence, which
included, among other things, the testimony of three expert
witnesses, and argued that a jury could conclude that multi-
ple factors or events concurred or combined to cause his inju-
ries. In response, defendant argued that this was the type of
negligence case where the but-for instruction would provide a
clear statement about causation.[6] We agree with defendant.

E. *It was not error to not give the substantial-factor
instruction.*

       The remaining arguments made by plaintiff on
appeal do not persuade us that the trial court erred by not
giving the substantial-factor instruction.

_____

       [6] We note that defense counsel also made this argument:

       "So giving [the substantial-factor] instruction, Your Honor, invites the risk
       that the jury will render a verdict against my client even if it finds that the
       phantom driver's conduct alone would have been sufficient to cause the harm,
       which does not satisfy Plaintiff's burden."

But that argument describes one of the *Joshi* scenarios where the but-for test
would fail, making the substantial-factor instruction a more appropriate choice.
While that would have been an argument more aligned with plaintiff's posi-
tion, it is clear that plaintiff did not make that argument. Nor did he argue that
this case fits within any of the *Joshi* scenarios that would support use of the
substantial-factor instruction. And although there are times when inartful argu-
ments are given context and clarity by the arguments they draw in opposition,
that is not the case here.

The jury deliberated and returned a verdict on which it answered the specific question, "Was the defendant's negligence a cause of damages to the plaintiff?" with a yes. We reject plaintiff's contention that because the jury was instructed only on but-for causation, it would not have understood that defendant's conduct would be a cause of plaintiff's injuries if the collision had been a substantial factor, although not necessarily the only factor, in causing those injuries. Plainly put, the jury found that defendant's conduct caused plaintiff's injuries.

We also reject plaintiff's argument that because the jury concluded that the injuries would not have occurred in the absence of the rear-end collision, it would somehow conclude that it was to affirmatively apportion damages between defendant and any other causes, including the sudden stop. The record does not contain evidence that the sudden stop was, more probably than not, a cause of plaintiff's injuries. Certainly, no expert offered that opinion to a reasonable degree of probability. The jury was properly instructed by the trial court not to decide the case on "guesswork, conjecture, or speculation." They were also instructed on damages, and plaintiff has not, and does not, challenge those instructions in any way. Given that we presume juries will follow the court's instructions, *State v. Shinnick*, 288 Or App 847, 848-49, 407 P3d 877 (2017), *rev den*, 362 Or 794 (2018), and given the evidentiary record viewed in light of *Haas*, it is difficult to see how the trial court would have been required to give the substantial-factor instruction.

Finally, we are not persuaded that the amount of the jury's damage award alone reflects that it misunderstood the instruction on causation. *The jury found that defendant caused plaintiff's injuries.* Given that it found the necessary causal link, the more likely explanation for the low monetary award is that the jury found that the injuries were not as significant as claimed. Jurors were given a number of tools to evaluate witness testimony through instructions that both parties agreed to that might reasonably have led to the final award. We cannot say, on this record, that the amount of the award was driven by, or connected to, a

misunderstanding of the causation instruction. The trial court did not err.

Affirmed.